UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | )CRIM. NO. 1:19-10459-16, 32, |
| | )      8, 30, 48, 26 and 19 -RWZ |
| V. | ) |
| | ) |
| MATTHEW PALACIOS ET AL | ) |
| | ) |

**DEFENDANTS MATTHEW PALACIOS', ISAAC FELIX-RIVERA'S, JUAN LIBERATO'S, MICHAEL COTTO'S, JEREMIA MEDINA'S, ORLANDO SANTIAGO TORRES' AND ROBERT LARA"S OPPOSITION TO GOVERNMENT'S MOTION FOR PROTECTIVE ORDER (Doc. 359)**

Defendants MATTHEW PALACIOS, ISAAC FELIX-RIVERA, JUAN

LIBERATO, MICHAEL COTTO, JEREMIA MEDINA, ORLANDO SANTIAGO

TORRES and ROBERT LARA hereby oppose the Government's Motion for Protective

Order (Doc. 359), filed on January 17, 2020, Palacios, Felix-Rivera, Liberato, Cotto,

Medina, Santiago-Torres and Robert Lara rely upon the following:

1.      The charge against Palacios, Felix-Rivera, Liberato, Cotto, Medina,

Santiago Torres and Robert Lara in the indictment (Doc. 1) is conspiracy

to conduct enterprise affairs through a pattern of racketeering activity

possession, a violation of 18 U.S.C. § 1962(d).

2.      The Affidavit of Special Agent Dominic Coppo (hereinafter Affidavit)

filed in support of the indictment of sixty-two individuals and offered as

an exhibit at the detention hearing, attached as Exhibit "D" to MOTION

FOR REVIEW, REVOCATION AND RECONSIDERATION BY THE

DISTRICT COURT OF THE MAGISTRATE JUDGE'S DETENTION

ORDER (Doc. 303) recounts a multi-year investigation, involving several

states, of the Latin Kings organization.

3.   The Government relies upon its as yet unsubstantiated allegations in the

indictment and upon the Affidavit which fails to demonstrate its burden as

to each defendant to show how he is currently involved in any acts of

violence and of intimidation so as to justify its blanket protective order so

effectively impeding defendant-counsel cooperation and collaboration to

investigate and prepare for trial as to deny each defendant effective

assistance of counsel.

4.   It is insufficient for the Government to allege that, because 2 of the

defendants, A RODRIGUEZ and W PEGUERO, have allegedly reviewed

police reports and grand jury minutes so as to intimidate and commit

violence upon law enforcement cooperators (without any Government

demonstration that their use of these materials caused the intimidation and

violence) all 60 other defendants should be constrained from complete and

thorough review of the anticipated mammoth amounts of Government

discovery materials with which they need to familiarize themselves deeply

and meaningfully discuss with their counsel. The Government provides no

logical link between its allegations and the so called danger it predicts will

happen to its witnesses. Even if the Government satisfactorily

demonstrated this link, it cannot thereby eviscerate the defendant's right to

prepare for his trial with his counsel in the best way available to him as the

defendant is entitled to the most zealous advocacy that his counsel can provide and the defendant is entitled to his constitutional right to unfettered and undiluted effective assistance of counsel.

5. The discovery is reportedly voluminous and, upon information and belief, includes several thousands of pages and media files, photographs, audio/video recordings, Title III recordings, transcripts of recordings, laboratory analysis of drugs and other pieces of physical evidence and telephone records.

6. The Government alleges in its motion that there exist lists and spreadsheets of persons targeted for violence by the Latin Kings but the Government offers no supposed spreadsheets and/or lists in support of its motion, reveal no data to show their creation by any detained or released-on-bail indictee and otherwise offer no facts to show involvement by the indictees in any violence connected to said lists and/or spreadsheets.

7. Unsubstantiated allegations should not succeed at undermining constitutional rights.

8. The Government's proposal to limit access of the discovery materials to detained indictees at the detention facilities at which they are housed effectively delays trial preparation and effective communication by counsel with his/her client.

9. First, based on personal experiences with prior federally detained inmates at Plymouth County House of Correction, F.C.I. Wyatt, Norfolk County Jail (Dedham) and Essex County House of Correction at Middleton, the

prison facilities limit access to computers to their prisoners to small periods of time ranging from half hour time periods two times weekly up to one hour two times weekly. Often, the defendant is denied access to the use of the computer because the institution has to cancel the defendant's time to use it for various unexplained reasons.

10.     With thousands of pages of materials to review, the defendant's review of discovery at that pace limited by the facilities will require several months, thereby severely impeding the progress to trial and speedy trial rights of the defendants.

11.     The Government has not averred anywhere in its Motion for Protective Order that it can achieve agreements with the Superintendents of the prison facilities to obtain for the prisoners quicker and/or more frequent access to computers to review the discovery.

12.     Given the volume of discovery the defendants must review, the government's insistence that a defendant take no notes on the discovery materials and possess no copies of same renders its plan unworkable and untenable. A defendant is being asked to retain in his head the specific bate-stamped numbers of pages he has read so as to be able at a later time to discuss the detailed contents of each page that pertains to his case. The attorney has no meaningful way to address the client's concerns with each page unless (s)he has the page in front of him to discuss with the client. As several days or weeks or even months may pass from the time the client reads the relevant materials on the computer at the prison to the time he

meets with his attorney, the client may need to reread the material in front

of the attorney. This becomes time wasted for the attorney who has to sit

there with his client while his client undertakes refreshment of his

memory. Should the required attorney-client review consume hundreds of

pages, the time will involve so many visits that months will be consumed

in the process.

13.      The above paragraph 12 does not address the further problems caused by

the defendant's inability to take notes or have copies of pictures, lab

reports, videos, etc.

14.      The Government sets forth to counsel no data as to the institution's rules

or willingness to make said materials available to Palacios, Felix-Rivera,

Liberato, Cotto, Medina, Santiago Torres and R. Lara.

15.      The Government sets forth no information as to the quantity of material

that qualifies as automatic discovery but inference that it is a huge quantity

can be gleaned from the fact that it intends to send multiple computers to

the institutions.

16.      The Government does not assert and Palacios', Felix-Rivera's, Liberato's

Cotto's, Medina's, Santiago Torres' and R. Lara's counsel do not know

whether the Plymouth House of Correction or other incarcerative

institutions will limit their respective defendant in his viewing or listening

periods, and if so, to what extent.

17.        Without a more detailed description of the discovery materials, defense counsel cannot specifically address the many anticipated problems that the Government's requested prohibition create.

18.        Palacios', Feliz-Rivera's, Liberato's, Cotto's, Medina's, Santiago Torres' and R. Lara's counsel anticipate, as illustration, that there may be several telephone records that each counsel would require each defendant to review to seek to determine whether he recognizes any of the telephone numbers. Such a review consumes unnecessary time of defendant's counsel when the defendant could engage in this review by himself and is rendered more efficient when the defendant can mark on the individual page whether and how he can identify a telephone number and return that page to his counsel.

19.        Absent the restrictions the Government seeks, defendant's counsel's normal practice would be to send the defendant a complete copy of the paper materials, have him review same, and return by mail pages with comments thereon that pertain to them in this matter.

20.        Defendant's counsel would also advise his client either to read each line sheet provided by the Government or to listen to the disc of Title III recordings made available to him at the Plymouth County House of Correction.

21.        The Government could arrange with the facility that the defendant be prohibited from sending out of the institution any batestamped materials unless it or they were being sent to undersigned counsel by the defendant.

This is a much easier way for the Government to accomplish its aim—to allow the defendant to have access to all materials provided without fear that it will be disseminated to anyone "on the street" or used to intimidate Government witnesses although the defendant reiterates that the Government has shown with regard to Palacios, Felix-Rivera, Liberato, Cotto, Medina, Santiago Torres and R. Lara no reason at all for its desired imposition of this restriction upon them.

22. The conditions the Government seeks to impose upon the defendants' counsel are unduly burdensome and imposed without sufficient reason, as they potentially require defendants' counsel to spend many hours at CJA rates sitting in person with their defendants without making efficient use of either each defendant's or defendant's counsel's time.

23. The Government is silent as to whether or not counsel can share any of the discovery directed to him or her with any other counsel in the case. No good reason exists to require this restriction.

24. The Government appears to limit defense counsel's use of the materials. For example, defendant's counsel would be unable to have the materials shown by an investigator, or be unable himself to show the materials, to a potential witness who might be an unindicted co-conspirator, or an acquaintance of the defendant who might provided an alibi to the defendant, to give but two illustrations. Counsel ought not to be foreclosed from making such proper uses of the discovery materials. Moreover, the Government insists that the unindicted coconspirator must abide by the

terms of the confidentiality order but offers no way to have the defendant's counsel compel that agreement if refused by the co-conspirator, leaving the defendant's counsel with the Hobson's choice of not disclosing the information to the potential witness or running afoul of a confidentiality agreement that imperils his entitlement to testimony of a potential witness.

25.   The Government seeks to have its protective order apply to Government's former production of discovery in prior prosecutions. It gives no reason why. Nor does it shoulder the burden of proof why any Motion for Protective Order should be so far-ranging and overbroad. Nor does it discuss how materials that are made known to defendant's counsel such as copies of phone dumps, photographs of victims, autopsy reports or crime scene photographs but forbidden to be given to the incarcerative detention facilities are to be shown to or reviewed by the defendant so that the defendant can determine their relevance to his case and, if so, address these documents in sufficient detail with his counsel to prepare his defense.

26.   The Government's Requested Protective Order would require a defendant filing a motion that relies in part or references in part the substance of any discovery materials to confer with the Government as to whether or not the motion could be filed on the public docket, a more cumbersome, time-consuming procedure than presently required under Judge Zobel's Standing Order re: Protective Orders and could require, in the event the

Government during the conference disagrees with counsel that the motion could be filed on the public docket, frequent filings under seal which, in turn, can result in some delay before decision. As to sealed motions, the Government fails to demonstrate to this Court why Local Rule 7.2 does not adequately address sealed and impounded motions. Nor does it carve out an exception for ex parte motions.

27.     Magistrate Bowler in her "MEMORANDUM AND ORDER RE: GOVERNMENT'S MOTIONS FOR PROTECTIVE ORDER (DOCKET ENTRY ## 61, 82); MOTION TO COMPEL AUTOMATIC DISCOVERY (DOCKET ENTRY # 103)" (DOCKET ENTRY 137) in *United States v. Demetrius Williams et al*, Crim. No. 15-10145- RGS (The MS-13 case) sets out in depth the applicable law and considerations which mandate the conclusion that the overbroad prohibitions the Government presently seeks would, if obtained, emasculate the attorney's effectiveness with his client and irremediably eviscerate the defendant's ability, without his counsel's full aid, to prepare well for trial. The Magistrate said at pp. 9-12 of her Memorandum the following, equally applicable to the case at bar:

> Rule 15 (d) governs protective orders regarding discovery material in criminal cases. Fed.R.Crim.P. 16(d) (1); see *United States v. Lee*, 314 F.3d 637, 652 (8th cir. 2004); *United States v. Smith*, 985 F.Supp.2d 506, 522 (S.D.N.Y. 2013) (Rule 16 contains a "provision governing protective orders related to the production of pretrial discovery"). The rule requires a showing of good cause. Fed.R.Crim.P. 16 (d) ; see *United States v. Bulger,* 283 F.R.D. 46, 52 (D . Mass. 2012) (under Rule 15(d), "good cause provides the basis to enter a protective order").

Good cause ordinarily requires "a particularized, specific showing." *United states v. Bulger*, 283 F.R.D. at 52; see *United States v. Wecht*, 484 F.3d 194, 277 (3rd Cir. 2007) ("' [b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing'"), *United States v. Carriles*, 654 F.Supp.2d 557 , 565 (W.D.Tex. 2009)("motion for a protective order ordinarily 'contemplates a particular and specific demonstration of fact'); see also *Anderson v. Cryovac, Inc.,* 805 F .2d 1, 7 (1st Cir. 1986) (under Fed. R. Civ. P. 26 (c) , "finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements"). "The nature of the showing of particularity, however, depends upon the nature or type of protective order at issue." *United States v. Bulger*, 283 F.R.D. at 52 (citing Manual for Complex Litigation (Fourth) § 11.432 (2012)). Blanket or umbrella protective orders, such as the ones proposed by the government, by their nature are "'typically made without a particularized showing to support the claim for protection, but such showing must be made wherever a claim under an order is challenged.'" id. at 53 (quoting Manual for Complex Litigation (Fourth) § 11.432 (2012), in parenthetical). Whereas blanket protective orders are "'useful and expeditious in large scale litigation,' they can be overbroad and unnecessary." *United States v. Smith*, 985 F.Supp.2d at 545 (citations omitted). Moreover, in determining the appropriate level of protection, it is important to "ensure that a protective order 'is no broader than is necessary' to serve the intended purposes." id.

Here, the government's interest of protecting potential witnesses from intimidation and retaliation is undeniably a valid concern. see *United States v. Bulger*, 283 F. R.D. at 55-56. Indeed, "the advisory committee notes to rule 16(d) recognize the need to protect material when disclosure may impact the safety of a witness or lead to witness intimidation." *id.* at 55; Fed.R.Crim.P. 16 (d), Advisory Committee Notes to the 1966 Amendments.

...[t]he government's showing is relatively weak when balanced against the concerns raised by the defendants of having access to the withheld automatic discovery material to prepare for trial. A defendant's mere receipt of drugs, as described in the affidavit, does not demonstrate a risk that the defendant will engage in witness intimidation. Whereas the facts show that a number of the defendants have engaged in violent behavior, the government does not present a strong case that any defendant is likely to intimidate or retaliate against a prospective witness. Moreover, the government makes no showing that the categories of the automatic discovery material produced to date [or to be produced] (photographs, audio/video recordings, laboratory analysesand telephone records)

implicate a viable risk of witness intimidation or retaliation." The government's strongest showing relative to intimidation concerns [the recorded remarks] of individuals who are charged in [this] case. The individual defendants in this case, however, cannot be shown to date to have engaged in any act of intimidation or violence to the known, identified informants.

28.     Defendants therefore oppose the Government's Motion for Protective Order.

29.     Defendants' counsel request the automatic discovery to which each counsel and his client are entitled and further requests that they be permitted to disseminate without restriction all documents that they determine each must send to his respective defendant for the defendant's use in preparing his defense at trial.

        **WHEREFORE**, Defendant MATTHEW PALACIOS, ISAAC FELIX-RIVERA, JUAN LIBERATO, MICHAEL COTTO, JEREMIA MEDINA, ORLANDO SANTIAGO TORRES and ROBERT LARA respectfully request that this Court DENY the Government's Motion for Protective Order.

                                    Defendant
                                    Matthew Palacios
                                    By his Attorney,

                                    */s/ James B. Krasnoo*
                                    James B. Krasnoo
                                    (BBO No. 279300)
                                    jkrasnoo@kkf-attorneys.com
                                    Krasnoo, Klehm and Falkner, LLP
                                    28 Andover Street, Suite 240
                                    Andover, MA  01810
                                    (978) 475-9955
                                    (978) 474-9005 (facsimile)

                                    Defendant
                                    Isaac Felix-Rivera
                                    By his Attorney,

*/s/Scott P. Lopez*
Scott P. Lopez
BBO # 549556
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210
(tel) (617)439-4990
(fax) (617) 439-3987
Email:  splopez@lawson-weitzen.com

Defendant
Juan  Liberato
By his attorney,


*/s/James J. Cipoletta*
James J. Cipoletta
BBO# 084260
Citizens Bank Building
385 Broadway - Suite 307
Revere, MA 02151
781.289.7777

Defendant
Michael Cotto
By his attorney,


*/s/Tracy A. Miner*
Tracy A. Miner
BBO# 547137.
Orkand Siddall LLP
470 Atlantic Avenue, 4th Floor
Boston, MA 02210
tel:  (617) 273-8377
fax: (617) 273-8004
tminer@mosllp.com | mosllp.com

Defendant
Jeremia Medina
By his attorney,

*/s/Raymond E. Gillespie*
Raymond E. Gillespie
BB0 # 19200

875 Massachusetts Ave, Ste. 32
Cambridge, MA 02139
(617) 661-3222
rgillespie1@prodigy.net

Defendant
Orlando Santiago Torres
By his attorney,

*/s/Paul Garrity*

Paul Garrity
BBO#555976
14 Londonderry Road
 Londonderry, NH  03053
Tel. No. 603-434-4106
 garritylaw@myfairpoint.net.

Defendant
Robert Lara
By his attorney,

*/s/Leslie Feldman-Rumpler*

Leslie Feldman-Rumpler
Attorney at Law
229 Harvard Street
Brookline,MA  02446
(617) 728-9944
BBO#555792
leslie@feldmanrumplerlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the within motion was served upon AUSA Phillip Mallard, United States' Attorney's Office, Ninth Floor, One Courthouse Way, Boston, MA 02210 via her email address philip.mallard@usdoj.gov, through the Court's ECF electronic filing system, on January 27, 2020.

*/s/ James B. Krasnoo*